IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEANDRA BRYANT, Individually and as Administrator of the Estate of LUCAS M. BRYANT, Deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>FCA US LLC (Fiat Chrysler Automobiles US LLC), f/k/a Chrysler Group LLC, f/k/a Chrysler LLC, f/k/a Daimler Chrysler,<br><br>    Defendant. | Case No. 3:21-cv-1312-DWD |

### MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court are various discovery disputes related to Plaintiff's Notice of Deposition (Doc. 53-1) under Federal Rule of Civil Procedure 30(b)(6), Defendant's Responses and Objections to the Notice of Deposition (Doc. 54-12), the parties' Joint Written Discovery Report ("JWDR"), and Plaintiff's Motion with Suggestions in Support of Sanctions ("Motion") (Doc. 53) under Federal Rule of Civil Procedure 37.

### I. Background

On October 12, 2022, Plaintiff transmitted a Notice of Deposition under Rule 30(b)(6) to Defendant. On December 12, 2022, Defendant transmitted its Response and Objections to the Notice of Deposition to Plaintiff. On December 28, 2022, the parties submitted the JWDR, which outlined four remaining disputes relating to the Notice of

Deposition. The four disputes pertained to Defendant's customer complaints (Topic 9), the lawsuits or other claims involving the brake transmission shift interlock safety recalls (Topic 12), Defendant's location and record retention policies of documents and things identified in certain exhibits (Topic 13), and Defendant's policies, methods, and technologies, concerning the retention and management of documents that were not originally created in electronic format, over the relevant time period (Topic 25).

On January 10, 2023, the Court held a status conference on the JWDR, where Defendant's objections to the above-described Topics were overruled. (Doc. 51). The relevant deposition of Mr. Dave Valley was held on the next day, January 11, 2023.

On January 24, 2023, Plaintiff filed its Motion under Rule 37, arguing Defendant violated and frustrated the operative Scheduling Order (Doc. 49), the agreements in the JWDR, and the Order overruling the objections to the Topics outlined in the JWDR. (Docs. 51; 53, pgs. 1-2). Defendant's conduct allegedly prejudiced Plaintiff's discovery efforts and trial preparation, as Defendant "feigned resolution" of the Topics outlined in the JWDR and "deliberately failed" to honor its discovery agreements. (Doc. 53, pg. 2). More specifically, Defendant allegedly manipulated the sequence, timing, and content of documents and things produced; failed to properly prepare and produce its Rule 30(b)(6) witness on the "Agreed" Topics (Topics 26, 29-35, and 50) and the Topics to which Defendant's objections were overruled by the Court (Topics 9, 12, 13, 25); and instructed the witness not to answer inquiries on Topics 9, 12, 13, and 25. (Docs. 51; 53, pg. 2). For these reasons, Plaintiff requested the imposition of Rule 37(b) sanctions. (Doc. 53).

In a Response in Opposition to the Motion (Doc. 54), Defendant argues the Motion "omit[s] important factual context" and "misrepresent[s] [Defendant]'s conduct during the deposition[]." (Doc. 54, pg. 2). Defendant states it has continually offered an additional witness to Plaintiff, but Plaintiff instead seeks "to disparage" Defendant as a bad actor in discovery without working to resolve the remaining discovery disputes. (Doc. 54, pg. 2). Likewise, during the prior meet and confer conferences and at the deposition on January 11, 2023, Defendant notes it made clear that a different witness was necessary to respond to the four Topics in the JWDR (Topics 9, 12, 13, and 25). (Doc. 54, pgs. 7-9). Due to when the Court overruled its objections to Topics 9, 12, 13, and 25, Defendant suggests it had less than 24 hours to prepare such a witness. (Doc. 54, pgs. 8-9). Nevertheless, Defendant asserts Mr. Valley answered questions "to the best of his ability" and "based on his personal knowledge." (Doc. 54, pgs. 9-11). Defendant argues, aside from Topics 9, 12, 13, and 25, the other Topics discussed in the Motion (Topics 26, 29-35, and 50) were broad and vague. (Doc. 54, pgs. 11-14, 16). Defendant also argues Plaintiff's questioning on Topics 26 and 50 went beyond what was ultimately agreed to by the parties before the deposition. (Doc. 54, pgs. 12, 14-16).

On March 3, 2023, the Court held a Discovery Dispute Conference related to the Motion. (Docs. 56 & 63). At that time, the Court received argument from Defendant as to why, despite the overruling of Defendant's objections to Topics 9, 12, 13, and 25 on January 10, 2023, Mr. Valley was not prepared to testify on January 11, 2023. (Doc. 63, pgs. 3-10). Defendant was contrite in explaining that the case has involved "back and forth discussions" about deposition topics and deadline amendments, it previously

informed Plaintiff that additional time would be needed to prepare a separate witness if the Court overruled its objections, and that Defendant made a "mistake" without any "dilatory or obstructive" motive. (Doc. 63, pgs. 5-10). Defendant emphasized, "[w]e never intended to not give [Plaintiff] a witness if your Honor overruled our objections, but it wasn't Mr. Valley." (Doc. 63, pg. 8). Defendant represented that it had already offered the separate witness, Mr. Brooks, to Plaintiff for Topics 9, 12, 13, and 25. (Doc. 63, pgs. 11-12).

In response, Plaintiff suggested, due to the January 13, 2023, deadline for a Rule 30(b)(6) deposition, "the next guy" should have been ready to testify after Mr. Valley on January 11, 2023. (Doc. 63, pg. 13). Plaintiff noted that deadline made it impossible to schedule a deposition of Mr. Brooks, as intended by Defendant. (Doc. 63, pgs. 13-14).

Further, relating to Topics 13 and 25, the parties argued about claims of privilege and Defendant's Office of General Counsel. (Doc. 63, pgs. 21-39). In short, Plaintiff was concerned about retention policies and the preservation of underlying factual data and information, which it stated was not privileged. (Doc. 63, pgs. 27-28, 31, 37-38). Defendant indicated, with its objections, it was trying "to limit [questioning] to the company in general, and I wanted to remind Mr. Valley that the OGC's policies are privileged." (Doc. 63, pg. 27). Defendant noted, "[t]his is a very pointed and limited objection to OGC," within its own department, and not the company in general. (Doc. 63, pgs. 29-30). In response to these arguments, the Court directed Defendant to determine, after speaking with the Office of General Counsel, whether there is a written record retention policy. (Doc. 63, pg. 40). If there is such a policy, Defendant was directed to submit that policy and a privilege log to the Court for an *in camera* review. (Doc. 63, pg. 40).

Next, the parties addressed Topics 25, 26, 29-35, and 50, which were agreed to before the deposition of Mr. Valley. (Doc. 63, pgs. 43, 53). As such, those topics, which were the subject of Plaintiff's Notice of Deposition and Defendant's Responses and Objections thereto, were not the subject of the JWDR or the January 10, 2023, ruling. Plaintiff argued Mr. Valley was unprepared or unresponsive to questioning on those topics on January 11, 2023, resulting in inadequate responses. (Doc. 63, pgs. 54-55). The Court reserved ruling and took all matters under advisement. (Doc. 63, pgs. 42-43, 55, 60).

After the Discovery Dispute Conference, the Court entered the following Order:

> ORDER regarding the Discovery Dispute Conference held on March 3, 2023. As stated on the record with respect to Topics 13 and 25 of the Notice of Deposition at Doc. 53-1, Defendant is **DIRECTED**, through Counsel and within 30 days, to (1) ascertain whether the Office of General Counsel has a record retention policy, and (2) if it does, to submit that record retention policy and an associated privilege log to the Court for an *in camera review*…. In relation to Topics 26, 29-35, and 50 of the Notice of Deposition, the Court **RESERVES** ruling until the completion of its review of those Topics and the parties' filings. Further, the Court **RESERVES** ruling on Plaintiff's Motion for Sanctions (Doc. 53) until Defendant has complied with this Order and the Court has assessed all outstanding Topics. Finally, within 21 days, the parties are **DIRECTED** to submit a Seventh Amended Scheduling and Discovery Order to the Court.

(Doc. 62).

Consistent with the Order at Doc. 62, the parties submitted a Seventh Amended Scheduling and Discovery Order, which the Court adopted on March 28, 2023. (Doc. 65). Relevantly, the parties agreed that "[d]epositions of one or more representatives of Defendant shall be taken by May 31, 2023." (Doc. 65, pg. 2). One week later, on April 5, 2023, the Court received Defendant's privilege log and the record retention policies from

the Office of General Counsel for purposes of an *in camera* review. (Doc. 66). Accordingly, for present purposes, the record is complete and a ruling is appropriate.

## II. Analysis

### A. The Motion

Plaintiff's Motion was filed under Rule 37(a)(3)(B)(ii) and (b)(2)(A)(i)-(iii). The former provision states: "A party seeking discovery may move for an order compelling an answer, designation, production or inspection. This motion may be made if…a corporation or other entity fails to make a designation under Rule 30(b)(6)." Fed. R. Civ. P. 37(a)(3)(B)(ii). The latter provision provides:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, *including an order under Rule 26(f)*, 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; [or] (iii) striking pleadings in whole or in part.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(iii) (Emphasis added).

Notwithstanding Rule 37(b)(2)(A), the Court must order a disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless it was substantially justified or the circumstances make the award unjust. Fed. R. Civ. P. 37(b)(2)(C); *see also DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 839, 959-60 (N.D. Ill. 2021) (stating, "substantially justified" is defined as "a reasonably debatable contention based on both fact and law," while

"unjust" refers to "the nature of the offending party's discovery failures and the degree of prejudice and harm visited upon the prevailing party relative to the prevailing party's own abuses of the discovery process (if any)"). Under these provisions, "[d]iscovery 'sanctions may only be imposed where a party displays willfulness, bad faith, or fault.' [Citation]." *Am. Nat. Bank and Trust Co. of Chic. v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 877-78 (7th Cir. 2005) (quoting *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997)); *see also Lair for Estate of Lair v. Reyes*, No. 18-cv-1017, 2020 WL 9718813, *4 (S.D. Ill. March 17, 2020) ("Fault…pertains to 'the reasonableness of the conduct or lack thereof, which eventually culminates in the violation.' [Citation].").

Further, under Rule 30(b)(6), which is at the center of the parties' discovery disputes, a "corporation has the duty to 'make a conscientious good faith effort to designate the persons having knowledge of the matters sought by the [discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters.' " *Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547-48 (N.D. Ill. 2008) (quoting *Buycks-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 342 (N.D. Ill. 1995)). As such, a corporation must prepare the corporate representative(s) to adequately testify to both subjects the deponent knows and should reasonably know. *See id.* (quoting *Beloit Liquidating Trust v. Century Indem., Co.*, No. 2-cv-50037, 2003 WL 355743, *2 (N.D. Ill. Feb. 13, 2003)). Implicit in designations of corporate representatives under Rule 30(b)(6) is the notion that "the witness will be able *and* willing to answer questions relating to the information sought." *See id.* at 548 (Emphasis in original).

Here, the Court emphasizes Plaintiff's Notice of Deposition is dated October 12, 2022. On November 29, 2022, the deadline for depositions of one or more representatives of Defendant was extended, by agreement of the parties, to January 13, 2023. (Docs. 48, pgs. 1-2; 49, pg. 2). Defendant transmitted its Response and Objections to the Notice of Deposition on December 12, 2022. The JWDR, which outlined the disputed Topics, was submitted on December 28, 2022. In light of this sequence of events, the Court rejects the argument that Defendant only had approximately 24 hours to prepare its Rule 30(b)(6) witness after the Court overruled its objections to Topics 9, 12, 13, and 25.

While the Court overruled Defendant's objections to Topics 9, 12, 13, and 25 approximately 24 hours before the deposition, Defendant had 91 days between the date of the Notice of Deposition and the date of the Rule 30(b)(6) deposition to fulfill its duty to prepare its witness(es). Further, Defendant had 45 days between the date that the Court accepted the Agreed Amended Scheduling Order (Docs. 48 & 49) and the newly imposed deadline of January 13, 2023, to fulfill its duty regarding Rule 30(b)(6) witness(es). Moreover, at a minimum, Defendant had 16 days between the date that the JWDR was submitted to the Court and the January 13, 2023, deadline, to prepare its witness(es). As such, the suggestion that Topics 9, 12, 13, and 25 were somehow foisted upon Defendant is patently false. It is notable that Defendant, at the January 10, 2023, Status Conference, did not raise its dilemma with the Court or seek to reset the January 11, 2023, deposition.

Clearly, Defendant is at fault for these circumstances. *See Am. Nat. Bank and Trust Co. of Chic.*, 406 F.3d at 877-78; *Reyes*, No. 18-cv-1017, 2020 WL 9718813, *4. It did not have a Rule 30(b)(6) witness prepared to testify in the event that the Court overruled the

objections to Topics 9, 12, 13, and 25. This prevented compliance with the deadline for completing depositions of Rule 30(b)(6) witnesses and the Order of January 10, 2023.

Nevertheless, in its discretion, the Court finds sanctions are not warranted, especially not under Rule 37(b)(2)(A)(i), (ii), or (iii). Further, although it is a much closer call, the Court concludes Defendant's failure was "substantially justified" and that an award of expenses would be "unjust" under Rule 37(b)(2)(C). *See DR Distributors, LLC*, 513 F. Supp. at 959-60. It appears to the Court that, after the service of Plaintiff's Notice of Deposition on October 12, 2022, and before the submission of the JWDR on December 28, 2022, the parties engaged in meet and confer conferences on the 53 expansive Topics. The parties agreed to extend the deadline for deposing Rule 30(b)(6) witnesses, and Defendant served its Response and Objections to the Notice of Depositions. Ultimately, the parties were able to agree, or so they thought, on 49 of the 53 noticed Topics, resulting in the submission of the JWDR pertaining to only Topics 9, 12, 13, and 25. In short, the parties took the time to amicably resolve most of the disputes without court intervention. Therefore, although Defendant could have been more diligent in its preparation of a Rule 30(b)(6) witness, it is clear to the Court that Defendant was not just standing idly by. Instead, it was engaged with Plaintiff on the issues and not causing intentional delay.

In light of these circumstances, the Court accepts Defendant's attorney's representation that the need for a separate Rule 30(b)(6) witness was always contemplated and communicated to Plaintiff in the event that the Court overruled its objections to Topics 9, 12, 13, and 25. Defendant asserts that dates for an additional deposition under Rule 30(b)(6) were offered in both February and March 2023. Now, the

parties have agreed to take such depositions by May 31, 2023. Further, the Court accepts Defendant's admission that the failure to seek an extension of the deadline for completing Rule 30(b)(6) depositions, at the Status Conference on January 10, 2023, was an honest mistake that could have avoided this situation. Rather than cancelling the deposition of Mr. Valley or seeking to extend the deadline for completing Rule 30(b)(6) depositions, Defendant chose to go forward with the deposition, knowing both Mr. Valley and a separate witness would have to be deposed. The Court also understands the point that Defendant anticipated succeeding on its objections, such that preparing a Rule 30(b)(6) witness on Topics 9, 12, 13, and 25 could have been rendered unnecessary. To be clear, the Court does not condone the conduct resulting in the present situation, but it understands Defendant's calculations and believes sanctions are presently unwarranted.

Finally, the parties were apparently mistaken about their agreement as to Topics 26, 29-35, and 50. However, the Court declines to impose sanctions based on finger pointing and divergent views of their "agreements," which were entered after meeting, conferring, and reporting to the Court via the JWDR. This is especially so where the new deadlines in the Seventh Amended Scheduling Order (Doc. 65) have prejudiced neither party. As alluded to at the Discovery Dispute Conference, it is unlikely that the Court could have accommodated a trial on the parties' prior trial date. (Doc. 63, pgs. 60-61).

Therefore, the Motion under Rule 37(a)(3)(B)(ii) and (b)(2)(A)(i)-(iii) is **DENIED**. The Court trusts, based on the assurances of Defendant's attorney, the circumstances resulting in the Motion and related to the noticed Topics will not be repeated before May

31, 2023. The Court is cognizant, though, that this trust could be misplaced, in which case the present procedural posture could be repeated and result in a different outcome.

### B. The Claimed Privileges Related to Topics 13 and 25

Next, in relation to Topics 13 and 25, the Court addresses the claims of privilege that were discussed at the Discovery Dispute Conference and in the Order at Doc. 62. Defendant timely submitted, for an *in camera* review, a privilege log and the record retention policies of the Office of General Counsel. (Doc. 62). The Court emphasizes Defendant's representation that it presents "a very pointed and limited objection [as] to OGC," within its own department, and not the company in general. (Doc. 63, pgs. 29-30).

On the one hand, the attorney-client privilege protects communications, made in confidence, by a client to an attorney for the purpose of obtaining legal advice. *See Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 394-99 (1981); *Trammel v. U.S.*, 445 U.S. 40, 51 (1980)); *see also RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013) ("The attorney-client privilege has long been understood to protect corporate clients and counsel."). Courts consider the following: (1) whether legal advice of any kind was sought by a client from a professional legal adviser in that capacity; and (2) whether the communication related to the client's purpose of seeking legal advice and was made in confidence. *See Sandra T.E.*, 600 F.3d at 618 (quoting *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)); *see also Urban 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4, LLC*, 334 F.R.D. 149, 155 (N.D. Ill. 2020) (articulating this test and recognizing, when the questions are answered affirmatively, the communications are permanently protected from disclosure by either the client or the

professional legal adviser, unless the protection is waived). The privilege protects the attorney-client relationship both in imminent or ongoing litigation and in the broader attorney-client relationship outside the litigation context. *See Sandra T.E.*, 600 F.3d at 618.

However, not all communications between a client and his or her attorney are covered by the privilege. *See Urban 8 Fox Lake Corp.*, 334 F.R.D. at 155. Since the attorney-client privilege operates in derogation of the search for truth, it must be strictly confined to communications that constitute legal advice or tend to directly or indirectly reveal the substance of client confidences. *See id.* (quoting *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *U.S. v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)). The communications must also be intended as confidential, so communications made in the presence of or with the intent that they will be disclosed to a third-party are not shielded by the privilege. *See id.* (citing *Evans*, 113 F.3d at 1462; *U.S. v. White*, 950 F.2d 426, 430 (7th Cir. 1991)); *see also RBS Citizens, N.A.*, 291 F.R.D. at 217 (" 'Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged.' [Citations].").

On the other hand, the work-product privilege protects documents prepared by an attorney in anticipation of litigation to analyze and prepare a client's case. *See Sandra T.E.*, 600 F.3d at 618 (citing Fed. R. Civ. P. 26(b)(3); *U.S. v. Nobles*, 422 U.S. 225, 238-39 (1975); *U.S. v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007)); *Urban 8 Fox Lake Corp.*, 334 F.R.D. at 155. Such an attorney has "an independent privacy interest" in the work product; accordingly, the attorney may assert the work-product privilege him or herself. *See Sandra T.E.*, 600 F.3d at 618 (citing *Hobley v. Burge*, 433 F.3d 946, 949-50 (7th Cir. 2006)). To identify

whether material is protected by the work-product privilege, courts must determine if, in view of the factual circumstances, it can fairly be said that the material was prepared due to the prospect of litigation. *See Urban 8 Fox Lake Corp.*, 334 F.R.D. at 156 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996)); *RBS Citizens, N.A.*, 291 F.R.D. at 217 (stating, for the privilege to apply, there must be an identifiable prospect of litigation because specific claims have arisen). Material created in the ordinary course of business is not protected by the work-product privilege, even if it has the "incidental effect" of assisting in litigation. *See Urban 8 Fox Lake Corp.*, 334 F.R.D. at 156, 161 (citing Fed. R. Civ. P. 26(b)(3) (1970 Committee Notes); *RBS Citizens, N.A.*, 291 F.R.D. at 217-18; *Heriot v. Byrne*, 257 F.R.D. 645, 663 (N.D. Ill. 2009)). Under either privilege, the party seeking to withhold evidence has the burden of establishing its applicability. *See id.*; *see also RBS Citizens, N.A.*, 291 F.R.D. at 217 ("The increasing inclusion of attorneys in business discussions and decisions has 'increased the burden that must be borne by the proponent of corporate privileges claims relative to in-house counsel.' [Citation].").

Finally, Federal Rule of Civil Procedure 26(b) requires a party who is withholding discoverable information to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and [to] do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). This may be done through a privilege log, as was ordered by the Court. *See RBS Citizens, N.A.*, 291 F.R.D. at 218; *see also Washtenaw Co. Employees' Retirement Sys. v. Walgreen Co.*, No. 15-cv-3187, 2020 WL 3977944, *3 (July 14, 2020) (recognizing privilege logs are necessary to allow opposing parties and courts to

13


evaluate the validity of privilege claims). The Court notes that the Northern District of Illinois has "distilled a template for privilege logs." *See Urban 8 Fox Lake Corp.*, 334 F.R.D. at 156. For each separate document, it has required a party to identify the following: (1) the date of the document; (2) the author and all recipients of the document, along with their capacities; (3) the subject matter of the document; and (4) the purpose of the document's production and a specific explanation as to why it is privileged. *See id.* (quoting *RBS Citizens, N.A.*, 291 F.R.D. at 218). The party must sufficiently detail the information to allow the Court to determine if the party has discharged its burden of establishing the applicability of the claimed privilege. *See id.* (quoting *RBS Citizens, N.A.*, 291 F.R.D. at 218); *see also Washtenaw Co. Employees' Retirement Sys.*, No. 15-cv-3187, 2020 WL 3977944, *3 (discussing courts' discretion to review, *in camera*, documents described in a privilege log). Notably, invalid claims of privilege are sanctionable. *See id.* at 165.

Here, Defendant has submitted 24 separate record retention schedules to the Court for an *in camera* review. Defendant also submitted an associated privilege log, which details those record retention schedules. Specifically, for each record retention schedule, Defendant identifies the date of creation, the author, the recipient, the document type (*i.e.*, "record retention schedule"), a basis for the claim of privilege (*e.g.*, attorney client privilege and/or attorney work-product privilege), and a description of the way in which the claimed privilege applies to the particular record retention schedule. Although the individual author of each record retention schedule is unknown, the privilege log notes that the author and recipient(s) were members of the Office of General Counsel. Only in

one instance was a record retention schedule distributed to both members of the Office of General Counsel and "former employees and independent contractors."

Following a diligent *in camera* review, the Court **FINDS** Defendant has failed to establish the applicability of either the attorney-client or work-produce privileges for the submitted documents, namely, Defendant's privilege log and the record retention schedules.[1] *See Urban 8 Fox Lake Corp.*, 334 F.R.D. at 156, 161; *RBS Citizens, N.A.*, 291 F.R.D. at 217. Indeed, it is entirely unclear to the Court why those documents may not be produced to Plaintiff or the subject questioning at a Rule 30(b)(6) deposition. The documents do not specifically identify any communications, let alone communications made in confidence, between a client and an attorney for purposes of the client obtaining any legal advice. *See Sandra T.E.*, 600 F.3d at 618; *Urban 8 Fox Lake Corp.*, 334 F.R.D. at 155. Likewise, even if the record retention schedules were prepared by attorneys within the Office of General Counsel in anticipation of litigation generally, the record retention schedules themselves do not appear to assist in the analysis or preparation of any client's case. *See Sandra T.E.*, 600 F.3d at 618; *Urban 8 Fox Lake Corp.*, 334 F.R.D. at 155-56, 161. Rather, despite any incidental effect on litigation, the record retention schedules are more akin to policies kept by any department, not just an office of general counsel, in the ordinary course of business. *See Urban 8 Fox Lake Corp.*, 334 F.R.D. at 156, 161.

---

[1] The Court notes that Defendant also invokes "trade secret" and "confidential business information" as bases for privilege claims in the privilege log. To the extent Defendant is arguing that those are bases for withholding the privilege log and record retention schedules from Plaintiff, the Court rejects that argument. It is unclear to the Court why any concerns of Defendant, related to trade secrets or confidential business information, may not be allayed by Federal Rule of Civil Procedure 26(c)(1)(G).

In so finding, the Court emphasizes that Defendant's record retention schedules only generically reflect, *inter alia*, "profile description[s]" and "[e]xample records" covered by the record retention schedules. The record retention schedules do not, in any way, reference specific records in the possession of the Office of General Counsel. Therefore, the Court concludes the privileges discussed in this Memorandum & Order do not bar questioning related to the record retention schedules in a Rule 30(b)(6) deposition. However, the Court recognizes such questioning may, at some point, go beyond the privilege log and record retention schedules presently under review. For example, the questioning could impermissibly delve into the specific underlying communications, data, or information subject to the record retention schedules and a proper claim of privilege by Defendant. At present, though, the Court is not tasked with reviewing any specific underlying communications, data, or information. As such, the Court merely finds the documents submitted for an *in camera* review are not privileged.

Accordingly, on or before **May 11, 2023,** Defendant is **DIRECTED** to produce the privilege log and record retention schedules to Plaintiff.

## C. The "Agreed" Topics

Lastly, the Court has completed its comprehensive review of Topics 26, 29-35, and 50, as described in the documents of record. In the Court's view, the Topics do not appear outside the bounds of a Rule 30(b)(6) deposition. Nevertheless, the Court recognizes that, at one time, the parties "agreed" to narrow Topics 26, 29-35, and 50 before the deposition on January 11, 2023. The Court declines to speculate as to the scope of those agreements or the ways in which they were or were not violated by the parties on January 11, 2023,

especially where they were not the subject of the JWDR submitted on December 28, 2022. Therefore, the parties are **DIRECTED** to meet and confer as to whether the prior "agreements" as to Topics 26, 29-35, and 50 may be clarified to govern any deposition held before May 31, 2023. In the event the parties cannot reach a consensus, the parties are **DIRECTED** to report the disputes, as to those topics only, to the Court.

### III. Conclusion

For the foregoing reasons, the Motion is **DENIED**. On or before **May 11, 2023**, Defendant is **DIRECTED** to produce the privilege log and record retention schedules to Plaintiff. Finally, the parties are **DIRECTED** to meet and confer as to the "Agreed" Topics (Topics 26, 29-35, 50). In the event the parties cannot resolve any disagreement as to those Topics, the parties are **DIRECTED** to report to the Court on those Topics only.

**SO ORDERED.**

Dated: May 4, 2023

_____
DAVID W. DUGAN
United States District Judge