IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEANDRA BRYANT, Individually and as Administrator of the Estate of LUCAS M. BRYANT, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> FCA US LLC (Fiat Chrysler Automobiles US LLC), f/k/a Chrysler Group LLC, f/k/a Chrysler LLC, f/k/a Daimler Chrysler, <br><br> Defendant. | Case No. 3:21-cv-1312-DWD |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is the parties' Joint Written Discovery Report ("JWDR") and Defendant's privilege log, which were submitted on August 8, 2023. The parties are at an impasse over the discoverability of 209 documents, outlined in the privilege log that Defendants argue are subject to the work-product doctrine. (JWDR, pg. 2). The documents "consist mainly of either vehicle download reports from inspections conducted by [Defendant's] investigators or vehicle inspection reports created by" such investigators. (JWDR, pg. 2). The Court held a hearing on the matter, as requested by the parties, on August 30, 2023.

In the JWDR, Plaintiff argues the documents are discoverable since they include factual data relating to similar incidents. (JWDR, pg. 2). Plaintiff also suggested there is a substantial need for the documents, which are otherwise unavailable. (JWDR, pg. 2).

Defendant argues the documents were created, in anticipation of potential litigation, by individuals hired to conduct investigations of vehicle incidents. (JWDR, pgs. 2-3). The documents were generated by outside investigators at the direction of its Office of General Counsel ("OGC"). (JWDR, pg. 4). This occurs when a notification of a claim or incident is received by the OGC. (JWDR, pg. 4). That way, the documents can be relied upon by the OGC when evaluating the claim or incident and advising Defendant's business operations on proceeding. (JWDR, pg. 4). Defendant provided Plaintiff with the names and contact information of individuals who had their vehicles examined by Defendant, so Plaintiff can conduct her own investigation. (JWDR, pg. 4). Nevertheless, Defendant stated Plaintiff still seeks the mental impressions of its outside investigators. (JWDR, pg. 4). Defendant has noted, "[n]one of the persons who authored reports…will be retained by [Defendant] to testify at trial as an expert." (JWDR, pgs. 4-5).

Now, in relation to the work-product doctrine, Rule 26(b)(3) provides:

(3) Trial Preparation: Materials.

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and

          (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

          (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3); *see also Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 621-22 (7th Cir. 2010) (noting the work-product doctrine is codified at Rule 26(b)(3)).

The work-product doctrine serves (1) to protect an attorney or representative's thought processes and mental impressions, and (2) to limit the circumstances in which attorneys may "piggyback" on the factual investigation of their counterparts. *See Sandra T.E.*, 600 F.3d at 621-22 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *accord Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 376 (N.D. Ill. 2012); *see also Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 408 (N.D. Ill. 2001) (noting the distinction between fact work-product and opinion work-product, the latter of which reveals an attorney's mental impressions, theories, conclusions, or opinions about the case, such that it "can rarely, if ever, be discoverable"). The test for applying the work-product doctrine asks whether, based on the nature of the documents and the facts of the case, it can fairly be said that the documents were prepared *because of* the prospect of litigation. *See Sandra T.E.*, 600 F.3d at 622 (quoting *Logan v. Comm'l Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir, 1996)); *accord Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983); *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 619 F. Supp. 3d 828, 837 (N.D. Ill. 2021).

The Court must distinguish between precautionary documents, developed in the ordinary course of business due to the remote prospect of litigation, and documents prepared due to an articulable claim *likely to lead* to litigation. *See Sandra T.E.*, 600 F.3d at 622 (quoting *Binks Mfg. Co.*, 709 F.2d at 1120); *accord RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 221 (N.D. Ill. 2013). Only documents in the latter group are protected by the doctrine. *See Sandra T.E.*, 600 F.3d at 622; *accord Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 163 (N.D. Ill. 2017); *see also Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 795 (N.D. Ill. 2015) ("While a lawsuit need not be underway for the doctrine to apply, [citation], '[t]he mere contingency that litigation may result is not determinative.' ").

Similarly, documents that are not primarily legal in nature, such as those containing technical information or underlying evidence, are not necessarily protected by the work-product doctrine. *See Hankins*, 619 F. Supp. 3d at 837-38 (quoting *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981); *Woodard v. Victory Records, Inc.*, No. 14-cv-1887, 2014 WL 2118799, *8 (N.D. Ill. May 21, 2014); *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990)); *see also Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 661 (S.D. Ind. 1991) (noting each component of the standard must be satisfied, as "an investigative or evaluative report shown to have been produced for litigation purposes when the prospect of litigation is determined to be remote is not work product, and a report produced at a time when litigation was justifiably anticipated is not work product if the report was produced in the ordinary course of business."); *accord Medical Assur. Co., Inc. v. Weinberger*, 295 F.R.D. 176, 183 (N.D. Ind. 2013). The party invoking the doctrine must establish its applicability. *See Hankins*, 619 F. Supp. 3d at 834.

In support of its position, Defendant cites two cases from this District, which the Court will briefly discuss. In *Alton & Southern Railway Company v. CSX Transportation, Inc.*, the Chief Judge reviewed, *inter alia*, the Proposed Findings of Fact and Conclusions of Law entered by a Special Master as to the scope of the work-product doctrine. *See* No. 17-cv-1249, 2020 WL 4933652, *1-2 (S.D. Ill. Aug. 24, 2020). The case involved a contract dispute, and the documents pertained to an audit or "Special Investigation." *See id.* at *1. In her ruling, which was entered after the benefit of reviewing the documents *in camera*, the Chief Judge outlined "a different view of the nature of the Special Investigation, its inception, and its progression" than the Special Master. *See id.* at *2-3. For example, certain findings of the Special Investigation were later "incorporated into more general corporate audit documents," but it appeared the Special Investigation commenced and its team members were selected to answer questions about the legal action for the corporate law department. *See id.* at *3-4.

Ultimately, the Chief Judge differentiated between the types of documents at issue when applying the work-product doctrine. *See id.* at *4. Initially, the Chief Judge found documents prepared primarily in relation to the Special Investigation were entitled to the work-product protection. *See id.* Documents that were "generally not protected" but which contained "discrete sections containing findings generated by the Special Investigation" were also entitled to the work-product protection, but they could be redacted and then produced.[1] *See id.* Further, the Chief Judge classified the documents as

---

[1] The Chief Judge did not order the production of these documents because it was not clear whether, in their redacted form, the documents would be pertinent to the requests for production and interrogatories. *See Alton*, No. 17-cv-1249, 2020 WL 4933652, *4.

fact work-product, "involv[ing] no conclusions, opinions, or legal theories concerning the litigation but rather deal[ing] with the underlying data used by the Special Investigation to reach is conclusions," and opinion work-product, "involv[ing] findings of the Special Investigation…[and] conclusions by party representatives that concern the instant litigation." *See id*. Potentially relevant to the instant case, the Chief Judge found that the documents classified as fact work-product should be produced, stating:

> The Court sees the EDI and AEI data as likely to provide an overly granular view of tariff application, which would make it extremely difficult for [Defendant] to adequately assess the financial treatment of the tariff charges without the sort of broader-scope data compiled by the Special Investigation. As [Defendant] cannot compile this information from any other source, the Court finds that [Defendant] has made a sufficient showing of a substantial need in order to overcome work product protection for relevant fact work product.

*See id*. at *5.

Also, *In re Yazmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Products Liability Litigation* involved a work-product dispute related to questioning directed at identifying documents designated or compiled by counsel in preparation for a witness's deposition. *See* No. 9-md-2100, 2011 WL 2580764, *1 (S.D. Ill. June 29, 2011). Retired District Judge David R. Herndon found *Spork v. Peil* was persuasive and "directly on point," wherein the Third Circuit "conclud[ed] that '[i]n selecting and ordering a few documents out of thousands[,] counsel could not help but reveal important aspects of his understanding of the case.' " *See id*. at *1-2 (quoting *Spork v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985)). When doing so, Judge Herndon noted the difference between an attorney's use of documents during the examination of an adverse or neutral witness versus his or her use

6

of documents during the private purpose-preparation of a client for a deposition. *See id.* at *2 (discussing *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1015-18 (1st Cir. 1988)). *In re Yazmin and Yaz* was like *Spork* because the defendant had already produced all of the documents plaintiffs were seeking. *See id.* Further, a forced disclosure of the documents compiled by the defendant "would implicitly reveal the thought processes of the attorney who selected the documents and would allow plaintiffs to glean which documents, out of millions already produced, opposing counsel believe[d] [we]re legally significant." *See id.*

      Here, at the time of the Discovery Dispute Conference, Defense Counsel indicated he had not personally reviewed the 209 documents at issue, even though an associate had done so for purposes of developing the privilege log. This circumstance places the Court in a precarious position when contemplating a ruling on whether the work-product doctrine broadly applies to the 209 documents at issue. In short, aside from the privilege log, the Court has no way of undergoing a thorough analysis to discern the specific nature of the 209 documents at issue, as was possible in *Alton*. In other words, the Court cannot discern whether the documents are work-product at all, are fact work-product, or are opinion work-product. By extension, the Court cannot discern whether the documents are nevertheless discoverable under Rule 26(b)(3)(A). Similarly, at this juncture, the case seems unlike *In re Yazmin and Yaz*, where the defendant already produced otherwise discoverable documents and the issue was whether, in a deposition, an attorney could glean from a witness the mental impressions of opposing counsel about the documents.

7

However, at the Discovery Dispute Conference, Defendant appeared to concede the 209 documents contain large amounts of raw underlying factual data that was electronically extracted from vehicles of the type at issue in this case. It was unclear to the parties whether those vehicles are still accessible. In any event, though, Defendant indicated it was not objecting to the production of documents solely containing that raw underlying factual data. Defendant suggested those documents, and perhaps documents containing only computer-generated narrative reports, could be produced to Plaintiff. Instead, Defendant objected to the production of documents containing opinion work-product derived from the raw underlying factual data by its investigators. Further, Defendant suggested, as it did in the JWDR based on *In re Yazmin and Yaz*, a disclosure of certain documents would implicitly reveal the thought processes and mental impressions of counsel when selecting the documents for evaluation in anticipation of this litigation.

In light of the foregoing, the Court **DEFERS** ruling. Defendant is **DIRECTED** to review each of the 209 documents in order to determine whether it maintains an objection based on the work-product doctrine. If Defendant decides to withdraw its objection to the production of a document, then Defendant is **FURTHER DIRECTED** to notify opposing counsel of that decision, in writing, and to produce the document as soon as possible. If Defendant decides to maintain its objection to the production of any document(s) based on the work-product privilege, then, **on or before September 22, 2023**, Defendant is **FURTHER DIRECTED** to submit such document(s) to the Court at its Chambers email for an *in camera* review. The document(s) shall be accompanied by a

Discovery Report that, in a clear, concise, and sequential fashion, states the basis for the objection to the production of the document(s). If it is necessary to submit document(s) and a Discovery Report, then Defendant is **FURTHER DIRECTED** to file a Notice of Compliance with the directives in this Memorandum & Order on the docket.

**SO ORDERED.**

Dated: August 31, 2023

s/ *David W. Dugan*<br>DAVID W. DUGAN<br>United States District Judge